## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEVIN T. LAVERY, M.D.,

      Plaintiff,

v.

PURSUANT HEALTH, INC.

      Defendant.

Case No. 2:22-cv-10613-BAF-KGA

## PURSUANT HEALTH, INC.'S MOTION FOR RULE 11 SANCTIONS AND INCORPORATED BRIEF

Defendant Pursuant Health, Inc. ("Pursuant"), by and through counsel, respectfully moves for sanctions against counsel for Plaintiff Kevin T. Lavery ("Lavery"), Bruce A. Inosencio, Jr., Kristina M. Fisk, and Inosencio & Fisk, PLLC, pursuant to Federal Rule of Civil Procedure 11.

## INTRODUCTION

Despite obvious defects, Lavery has attacked Pursuant with claims that cannot succeed. Lavery's claims center on alleged "trade secrets" he conveyed to Pursuant, but the facts and well-established law show that this intellectual property does not exist. A cursory investigation would have shown that the operative contract lacks confidentiality provisions, that Lavery publicly disclosed his alleged "trade secrets", and that Lavery did not convey any of his claimed "trade secrets" to Pursuant under

the relevant contract. Lavery freely admitted to each of these facts at his deposition—any one of which, alone, would defeat his claims.

This is precisely the sort of frivolous and harassing litigation that Rule 11 serves to deter. Rule 11 imposes a continuing duty from the time of initial filing for counsel to make an objectively reasonable inquiry into the factual and legal assertions represented to the Court. *See* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Revision). The Rule authorizes sanctions when counsel makes allegations lacking evidentiary support and when counsel "insists upon a position after it is no longer tenable" by refusing to withdraw unsupported contentions once on notice of a possible violation. *Id.*

This lawsuit arises from a 2007 Contribution Agreement under which Lavery assigned a patent to Pursuant (then known as SoloHealth) in exchange for a royalty and equity in the company. Consistent with Supreme Court precedent, Pursuant stopped paying the royalty when the patent expired. *See Kimble v. Marvel Ent'mt*, 576 U.S. 446 (2015). Lavery filed suit, invoking the *Kimble* exception for royalties that also serve as compensation for trade secrets. Dkt. 1 ("Compl."), ¶ 72; *see also id.* ¶ 22 (alleging Pursuant's health and wellness kiosk "is based on highly secret proprietary information that Dr. Lavery developed and which is a valuable trade secret"). But in the year since the filing of the Complaint, and despite repeated requests by Pursuant and the Court to describe his alleged "trade secrets," Lavery

has provided little more than statements of industry-specific jargon and, most importantly, has admitted to the absence of *any* reasonable efforts to maintain the secrecy of any purported "trade secrets." Without proof of this essential confidentiality element, there can be no legally protectible "trade secrets" as a matter of law. MCL § 445.1902(d).

This flaw is objectively obvious. A quick review of the Contribution Agreement reveals the lack of confidentiality provisions. And the ideas Lavery now claims as "trade secrets" were either published in the patent or disclosed to a third party without a duty of confidentiality. Moreover, while Lavery alleged he conveyed "trade secrets" (along with his now-expired patent) to Pursuant in connection with the Contribution Agreement, Compl. ¶ 72, he admitted under oath that he provided only the patent (and nothing else) at the closing of the Contribution Agreement.

Nevertheless, and despite repeated written notice by Pursuant, Lavery's counsel insists on maintaining these baseless and unsupported "trade secret" contentions in support of Lavery's claims. Lavery's counsel either failed to investigate these fundamental issues in violation of Rule 11(b)(3) (requiring factual contentions to have "evidentiary support") or ignored them in violation of Rule 11(b)(3) (requiring legal claims to be "warranted by existing law"). Accordingly, Pursuant respectfully requests that the Court require Lavery's counsel to pay all costs

and attorneys' fees incurred by Pursuant in relation to this matter and order any other relief that the Court deems just and equitable.

## RELEVANT FACTS

I.     **Lavery broadly asserts entitlement to post-expiration royalties on the basis that Pursuant's health kiosks incorporate his "trade secrets."**

Lavery seeks to enforce an allegedly perpetual royalty obligation flowing from his assignment of U.S. Patent No. 6,594,607 (the "Patent") under a 2007 Contribution Agreement executed with SoloHealth (now known as Pursuant).[1] The parties do not dispute that the Patent has expired. Under *Kimble*, Pursuant's royalty obligation expired with the Patent. 576 U.S. 446.

Lavery's Complaint sought to overcome the rule in *Kimble* by alleging that the royalty in the Contribution Agreement "was provided as consideration to Dr. Lavery not only in exchange for his contribution of the Patent, *but also in exchange for* his contribution of all proprietary information, *trade secrets*, and other intellectual property rights attendant to the Patent." Compl. ¶ 72 (emphasis added); *see Kimble*, 546 U.S. at 454 (allowing post-expiration royalties where related to non-patent intellectual property, such as trade secrets). Lavery expressly alleges that Pursuant's health and wellness kiosk "is based on *highly secret* proprietary information that Dr. Lavery developed and which is a valuable *trade secret*," *Id.* ¶

---

[1] Pursuant incorporates by reference the factual background set forth in its Motion and Brief in Support of its Motion for Summary Judgment. Dkt. 30.

22 (emphasis added), and that the royalty "is related to the Patent" but also includes

. . . *trade secrets* which have not expired." *Id.* ¶ 89 (emphasis added).

**II.    Lavery confirmed the lack of secrecy efforts, and thus no legally protectible "trade secrets"—calling into question the adequacy of counsel's pre-suit investigation.**

**A.    Lavery admits no confidentiality agreements protect his purported "trade secrets."**

It is black letter law that, to qualify as a trade secret, the pertinent information

must be protected from disclosure. "To be a trade secret, the information must, of

necessity, be a secret: specifically, there must be evidence presented that sufficient

measures have been taken to guard the secrecy of the information and preserve its

confidentiality." *Kubik, Inc. v. Hull,* 224 N.W.2d 80, 87 (Mich. Ct. App. 1974).

Specifically, the proponent must show that he or she limited access to the trade secret

to authorized persons under a duty of confidentiality. *Id*. Yet Lavery has admitted

that there are *no* confidentiality agreements governing his purported "trade secrets."

Dkt. 30-6, Lavery Dep. at 78:17-79:24, 83:13-85:11.

Despite the sweeping representations in Lavery's Complaint of "highly secret,

proprietary information," *see*, *e.g.*, ¶ 22, in written discovery, Lavery asserted that

his alleged trade secrets consisted only of (1) a "demonstration video which was

used for proof of concept," that was developed and *owned exclusively* by a third-

party, (2) a "business model," and (3) "the method to be used by Pursuant Health to

develop, implement, and expand the usage of the medical screening kiosk." Dkt. 30-

19, Pl.'s Resp. to Interrogs. at 6-7. Even in an untimely response to a court order compelling a more adequate description of his "trade secrets," Lavery never described "trade secrets" beyond these three categories. *See* Dkt. 24, Order Granting Defendant's Motion to Compel; Dkt. 30-20, Pl.'s Supp. Resp. to Interrogs. at 6-7; *see generally* Dkt. 30-6, Lavery Dep. at 111:11-132:11.

In its opening summary judgment brief, Pursuant explained how Lavery failed to enter into confidentiality agreements covering any of the foregoing alleged "trade secrets," destroyed any trade secret protections by disclosing the information in the Patent application, and disclosed his "trade secrets" to a third party (before he met SoloHealth) without any duty of confidentiality. Dkt. 30 at 24–28. Lavery's response to Pursuant's summary judgment motion does not at all address—much less dispute—this "lack of confidentiality" evidence. In fact, during discovery, Lavery admitted that there are no confidentiality agreements protecting any of his claimed "trade secrets." Dkt. 30-6, Lavery Dep. at 78:17-79:24, 83:13-85:11 (confirming the accuracy of these discovery responses). Lavery also admitted that he publicly disclosed all of his ideas in his patent application and did not "retain any ideas to be designated as trade secrets." *Id.* at 41:7-12. And he admitted that, before he ever met Foster, he shared his allegedly trade secret "ideas for a medical screening kiosk and its development" with a third party under no duty of confidentiality. *Id.* at 147:23-148:18.

6

Accordingly, because the uncontradicted evidence shows a complete lack of confidentiality safeguards, Lavery could not have transferred "trade secrets" to SoloHealth in 2007 as a matter of law. All of this information was reasonably available to Lavery's counsel at the time of filing of the complaint.

**B.    Lavery admits he transferred only the Patent—and nothing else— at the closing of the Contribution Agreement.**

During his deposition, Lavery *admitted he conveyed nothing other than the Patent* at the closing of the Contribution Agreement. Ex. 1, "Lavery Dep." at 71:19– 22, 72:20–74:10, 85:12–17, 99:15–23. This admission is significant because any "trade secret" that Lavery claims as the basis for his demand for a post-expiration royalty under the *Marvel* case must have been conveyed to Pursuant *before* Pursuant granted the royalty-bearing license to Lavery. Otherwise, these alleged "trade secrets" could not support the U.S. Supreme Court's requirement that the consideration for the post-termination royalty find its support in trade secrets conveyed to the licensing party. For this reason, Lavery's admission resolves any issue concerning what Lavery conveyed to Pursuant under the Contribution Agreement, and refutes his allegation in the Complaint that "in exchange for" the royalty Lavery provided "trade secrets" in addition to the Patent. Compl. ¶ 72.

### C.    Testimony from Lavery and his counterpart at SoloHealth, Bart Foster, establishes that Lavery only shared non-Patent information under the Consulting Agreement—not the Contribution Agreement.

To defend his royalty request, Lavery argues in his summary judgment response brief that he provided "ideas" during the roll-out of the kiosk. Dkt. 31 at 19-20. Lavery relies in this regard on the testimony of Bart Foster, who signed the Contribution Agreement on behalf of SoloHealth. *Id.* But Foster's deposition testimony shows Lavery offered these purported "ideas" in the performance of the *Consulting* Agreement—*after* executing the *Contribution* Agreement. Foster Dep. 159:15-17 (confirming Foster was unable to identify any ideas provided by Lavery "*before* the execution of the contribution agreement."). *See also id.* (testifying that Lavery's "ideas" were in the context of "the kiosk rolling out," 149:15–19, which did not occur until Q1 2008 (*after* execution of the Contribution Agreement), 114:6-21). Lavery confirmed this testimony by admitting at his own deposition that he provided nothing other than the Patent at closing of the Contribution Agreement. Dkt. 30-6, Lavery Dep. at 71:19–22, 72:20–74:10, 85:12–17, 99:15–23.

### D.    During the course of discovery, Pursuant notified Lavery's counsel about the lack of evidence of any "trade secrets."

Pursuant notified Lavery's counsel about the lack of evidence of any royalty-supporting "trade secret." On August 10, 2022, Pursuant sent a letter to Lavery's counsel describing, among other things, Lavery's failure adequately to describe his

8

trade secrets. Dkt. 19-1. Lavery failed to respond, prompting Pursuant to send a follow-up letter to Lavery's counsel on August 17, 2022, again identifying the lack of evidence of any "trade secret." Dkt. 19-2. The parties' counsel conferred about Lavery's failure to identify his trade secrets and Lavery counsel agreed to supplement his discovery responses to correct the deficiencies and to identify Lavery's purported "trade secrets" with the required specificity. Dkt. 19 at ¶¶ 15-16.

Once again, Lavery failed to provide any supplement and, on September 30, 2022, Pursuant filed a motion seeking a Court order compelling Lavery to supplement his interrogatory responses to identify his "trade secrets." Dkt. 18. The Court agreed that Lavery's interrogatory responses, and his "trade secret" descriptions in particular, were legally inadequate and ordered supplementation. Dkt. 24. On November 15, 2022, the Court entered an order requiring Lavery to supplement his interrogatory responses in full to identify his purported "trade secrets." *Id*. The order permitted Lavery two weeks to comply. *Id*. Lavery, however, ignored the November 29, 2022 court-ordered deadline. *See generally* Dkt. 25. Consequently, Pursuant moved for an order barring Lavery from relying upon any late-served disclosure about any purported "trade secrets." *Id*. On January 4, 2022, Lavery provided untimely supplemental interrogatory responses purporting to identify his "trade secrets." Dkt. 28. However, given the absence of any confidentiality restrictions, among other infirmities, even Lavery's out-of-time

supplemental responses fail to identify any legally protectible "trade secrets." Dkt. 29.

Counsel for Pursuant requested that Lavery withdraw his claims within 21 days of being served with this Motion, but Lavery refused. *See* Fed. R. Civ. P. 11(c)(2). Pursuant now seeks sanctions against Lavery's counsel for their violations of Rule 11.

## ARGUMENT

Federal Rule of Civil Procedure 11 "require[s] litigants to 'stop-and-think' before initially making legal or factual contentions." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Revision). It provides that, by filing papers with this Court, counsel has certified that: (1) the paper is not being filed for any improper purpose; (2) the claims are warranted by existing law or by a nonfrivolous argument for changing the law; and (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. *See* Fed. R. Civ. P. 11(b)(1)-(3). Importantly, Rule 11 obligations are ongoing and "emphasize[] the duty of candor by subjecting litigants to potential sanctions for insisting on a position after it is no longer tenable." Fed. R. Civ. P. 11 Advisory Committee Notes.

Under Rule 11, sanctions may be imposed if "a reasonable inquiry would have disclosed that the pleading, motion, or paper is (1) not well grounded in fact, (2) not

warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (affirming grant of Rule 11 sanctions where counsel failed to adequately investigate facts before filing complaint).

Courts in the Sixth Circuit use an objective standard of "reasonableness under the circumstances" which includes "a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11." *Id.* Counsel's subjective belief is irrelevant and instead this objective standard is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." *King v. Whitmer* 556 F. Supp. 3d 680, 716 n.45 (E.D. Mich. 2021) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes). In other words, "[a] good faith belief in the merits of a case is insufficient to avoid sanctions." *Id.* at 716-25 (granting Rule 11 sanctions where complaint contained baseless factual allegations).

"Plaintiffs' counsel's failure to adequately research the factual basis for the claims asserted in the complaint at the time of filing, and counsel's continued failure to refrain from pursuing meritless claims well over a year into the litigation support" is conduct sanctionable under Rule 11. *Merritt*, 613 F.3d at 629 (affirming Rule 11

sanctions where "a pre-filing investigation would have raised significant concerns about . . . the factual basis" for the plaintiffs' claims).

## I.    Lavery's counsel violated Rule 11 by advancing claims with no evidentiary support.

By signing the complaint and other motions, Lavery's counsel represented that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). But even a cursory pre-suit investigation by Lavery's counsel would have shown that the Complaint's allegations regarding "other intellectual property" and "trade secrets" lack support.[2] Indeed, Lavery admitted in discovery responses the absence of any confidentiality agreements governing any purported "trade secrets" and admitted that he conveyed no "trade secrets" (or anything other than the Patent) at the closing of the Contribution Agreement. Lavery's counsel nonetheless has continued to advance his "trade secret" arguments despite Lavery's uncontroverted admissions.

By advancing factually unsupported arguments—and continuing to advance them after discovery confirmed the lack of evidentiary support—Lavery's counsel violated the continuing obligations imposed by Rule 11. *See TS Holdings, Inc. v. Schwab*, No. 09-cv-13632, 2011 WL 13205959, at *8 (E.D. Mich. Dec. 16, 2011) (finding counsel violated Rules 11(b)(2) and 11(b)(3) by making legally irrelevant

---

[2] To the extent Lavery's counsel argues for trade secret protection for non-confidential information, this conduct violates Rule 11(b)(2), which prohibits counsel from making claims not warranted by existing law.

arguments and continuing to advance arguments after discovery uncovered absence of evidentiary support). "Thus, as the Sixth Circuit said regarding a case in which it found that sanctions were warranted, 'no reasonably prudent attorney, having performed even a modicum of investigation, would have filed those claims.'" *Id.* (quoting *Nieves v. City of Cleveland*, 153 F. App'x 349, 553 (6th Cir. 2005)).

## II. Because Lavery's claims centered on his baseless assertions, the Court should order his counsel to pay the entirety of the costs and attorneys' fees incurred by Pursuant in defending this matter.

While the Court has discretion to set appropriate sanctions, the Sixth Circuit has held the "assertion of claims . . . that clearly lacked any evidentiary support" justifies a sanction commensurate with the total fees incurred in defending against the baseless claims. *Rentz v. Dynasty Apparel Indus. Inc.*, 556 F.3d 389, 402-03 (6th Cir. 2009). This is because sanctionable assertions "central" to the case "infect[] the entirety of the pleadings" and "inflict[] significant time and cost on" opposing parties. *Dobronski v. Alarm Mgmt. II, LLC*, No. 18-11055, 2020 WL 6780267, at *4 (E.D. Mich. Nov. 18, 2020) (granting Rule 11 sanctions commensurate with "the reasonable expenses, including attorney's fees, [the defendant] incurred in litigating this suit").

In *Rentz*, the Sixth Circuit found the district court abused its discretion by awarding Rule 11 sanctions in an amount too low to deter the assertion of unsupported claims. 556 F.3d at 402-03. The operative complaint in *Rentz*, filed in

13

1997, alleged that a defendant, Warfield, promised to pay the plaintiff a sales commission. *Id.* at 393. But the plaintiff "repeatedly acknowledged" in his 1996 deposition "that Warfield never promised or agreed to pay him a commission," instead claiming he had bargained for a commission from Warfield's co-defendants. *Id.* at 398. While the district court found the plaintiff's attorneys violated Rule 11 by "continuing to allege that Warfield had promised to pay Rentz a commission when there was no evidence of such a promise," the court awarded less than $3,000 in attorneys' fees as a sanction. *Id.* The Sixth Circuit affirmed the grant of sanctions, but vacated and remanded the order for entry of sanctions in a higher amount. *Id.* at 403. The appellate court reasoned that, to effect Rule 11's deterrent purpose, the district court should have awarded "the reasonable attorney fees incurred by" Warfield in defending against the frivolous claims. *Id.* at 402.

Here, as in *Rentz*, Lavery's Complaint turns on "trade secret" allegations entirely unsupported by the evidence. As in *Rentz*, this lack of evidentiary support was apparent no later than Lavery's deposition, and should have been apparent after a reasonable pre-suit investigation. Thus, an appropriate sanction would compensate Pursuant for all reasonable expenses, including attorneys' fees, it incurred defending this lawsuit. *See id.* These sanctions should be imposed upon Bruce A. Inosencio, Jr., Kristina M. Fisk, and Inosencio & Fisk, PLLC. *See* Rule 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation

14

committed by its partner, associate, or employee."); *accord Rentz*, 556 F.3d at 399 (reasoning that sanctions against counsel, rather than a party, are especially appropriate when "the unfounded contentions" are "mixed questions of fact and law" as to which a client may reasonably trust his attorneys' professional judgment).

## CONCLUSION

For the reasons set forth herein, counsel for Lavery violated Rule 11(b) by bringing, and continuing to pursue, Lavery's claims which rely on unsupported allegations that Lavery conveyed "trade secrets" to Pursuant in connection with the 2007 Contribution Agreement. Because there is a complete lack of evidence for these "trade secret" allegations, the Court should impose sanctions on Lavery's counsel and their law firm pursuant to Rule 11(c)(1) and award Pursuant its reasonable attorneys' fees and costs incurred in this matter since the filing of the Complaint.

Respectfully submitted, this 26th day of May, 2023.

|  |  |
|---|---|
|  | /s/ Joel D. Bush, II |
| Steven Susser | Joel D. Bush, II |
| Mich. Bar No. P52940 | E.D. Mich. No. 5707205 |
| CARLSON, GASKEY & OLDS, P.C. | Bennett T. Richardson |
| 400 W. Maple Road, Ste 350 | E.D. Mich. No. 5998335 |
| Birmingham, MI 48009 | KILPATRICK TOWNSEND & |
| Tel.: (248) 283-0734 | STOCKTON LLP |
| ssusser@cgolaw.com | 1100 Peachtree Street, Suite 2800 |
|  | Atlanta, GA 30309 |

*Counsel for Defendant Pursuant Health, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

This 26th day of May, 2023.

/s/ Joel D. Bush, II
Joel D. Bush, II
E.D. Mich. No. 5707205

*Counsel for Defendant Pursuant Health, Inc.*