# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEVIN T. LAVERY, M.D.,

   Plaintiff,

v.

PURSUANT HEALTH, INC.

   Defendant.

Case No. 2:22-cv-10613-BAF-KGA

## PURSUANT HEALTH, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO SEAL

| | |
|---|---|
| Joel D. Bush, II | Steven Susser |
| E.D. Mich. No. 5707205 | Mich. Bar No. P52940 |
| Bennett T. Richardson | CARLSON, GASKEY & OLDS, P.C. |
| E.D. Mich. No. 5998335 | 400 W. Maple Road, Ste 350 |
| KILPATRICK TOWNSEND LLP | Birmingham, MI 48009 |
| 1100 Peachtree Street, Suite 2800 | Tel.: (248) 283-0734 |
| Atlanta, GA 30309 | ssusser@cgolaw.com |
| jbush@kilpatricktownsend.com | |
| btrichardson@kilpatricktownsend.com | |

*Counsel for Defendant Pursuant Health, Inc.*

## INTRODUCTION

The Sixth Circuit recognizes a presumption of public access to judicial records, which can only be overridden in civil litigation if information is privileged, a trade secret, or "required by statute to be maintained in confidence." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 308 (6th Cir. 2016).

Kevin Lavery's Motion to Seal his deposition transcript should be denied for two reasons:

1. **Waiver**: Dr. Lavery has waived the right to seal through his failure to mark the subject matter as confidential and his acquiescence to the public disclosure of about one-half of his deposition transcript.

2. **Failure of Proof**: Dr. Lavery has failed to identify any trade secret or other confidential information that would justify sealing under the Sixth Circuit standard.

Until now, the parties have not treated the deposition transcript (or the alleged trade secrets it contains) as confidential in this litigation. Nearly five months have passed since his deposition, yet Lavery never designated any portion of the transcript as confidential under the Protective Order. Similarly, Lavery did not designate as confidential any of his interrogatory responses describing his purported trade secrets, which Pursuant filed on the public docket in support of its September 2022 Motion to Compel and its March 2023 Motion for Summary Judgment. *See* Docs. 18-4, 30-18, 30-20.

Even if the parties had treated the information as confidential, the Motion still should be denied because the transcript does not contain any legally protectible trade secrets or confidential business information. Lavery admits that his trade secrets were never the subject of specific confidentiality agreements. And Lavery's claims against Pursuant are based on a Contribution Agreement that lacks any confidentiality obligation.

## ARGUMENT

"Unlike information merely exchanged between the parties, the public has a strong interest in obtaining the information contained in the court record." *Shane Grp.*, 825 F.3d at 305 (cleaned up). Consequently, the Sixth Circuit has held that "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Id.* (citation omitted); *see also* LR 5.3(b)(3)(C) (requiring "compelling reason" to justify sealing order). This is a "heavy" burden that requires the movant to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Shane Grp.* at 305-06.

I. **The Motion should be denied because neither party designated Lavery's deposition as confidential nor treated it as confidential.**[1]

Even though the Motion seeks to seal excerpts from Lavery's deposition transcript, Lavery never designated any portion of the transcript as confidential

---

[1] While Pursuant disputes Lavery's argument that portions of Dr. Lavery's deposition contain confidential information, Pursuant attempts herein to (1) refer the

- 2 -

under the Protective Order. Under the Order, the parties agreed to designate deposition testimony as confidential or highly confidential by either (1) making a statement on the record or (2) sending written notice within 14 business days after receiving the final deposition transcript. Doc. 15 § 5(b). Lavery's counsel attended his deposition, but did not state on the record that any of the testimony should be marked as "confidential" or "highly confidential." Similarly, Plaintiff's counsel did not send written notice of any confidentiality designations within 14 days after receiving the final transcript. *See* Mot. at 7 (conceding that Lavery did not designate the transcript as confidential). The court reporter thus did not mark the transcript as confidential and the copies of the transcript that have been disseminated to date are not designated as confidential.

The Protective Order allows parties to "correct[]" an [i]nadvertent failure to designate Discovery Material as Confidential Discovery Material or Highly Confidential Discovery Material." *Id.* § 7. However, the Motion does not present an instance of "inadvertence," such as when a party inadvertently fails to label one of thousands of documents as confidential. Rather, Lavery's counsel attended the

---

Court to public filings that include portions of the testimony that Lavery filed provisionally under seal; or (2) provide the Court with a summary of portions of Lavery's testimony that are not part of the public record to avoid disclosing the specific testimony.

deposition and understood the public nature of Lavery's testimony if not designated confidential.

Moreover, even as of the date of this Opposition—nearly five months after Lavery's January 31, 2023 deposition—Lavery has never followed the procedure in the Protective Order to designate the deposition as confidential after the initial 14-day window. *See id.* Indeed, Lavery did not even seek to designate the transcript as confidential after Pursuant, in March 2023, attached 76 pages of his testimony to its briefing in support of its Motion for Summary Judgment. *See* Docs. 30-6, 33-2. Because the deposition has not even been designated as confidential under the Protective Order, there is no compelling reason to seal the transcript.

Consistent with his failure to designate the deposition as confidential, Lavery has not treated the information at issue as confidential since the outset of this case. Lavery itemized his claimed trade secrets in interrogatory responses. *See generally* Doc. 18. Lavery did not designate the interrogatory responses as confidential, and Pursuant subsequently filed them on the public docket in support of its Motion to Compel, Doc. 18-4, and later filed Lavery's supplemental interrogatory responses in support of Pursuant's Motion for Summary Judgment, Doc. 30-20. Lavery never objected to the public filing of the purported trade secrets in either set of discovery responses. Finally, although the Motion asserts that "Pursuant likely does not want" the information in the Lavery deposition to be disclosed, Mot. at 2, Pursuant has

made it clear since the outset of this litigation that it has no trade secrets or confidential information related to the kiosk itself (as opposed to protected health information gathered from kiosk users). Doc. 30-11 at 41:14-15; *see also* Ex. 1 hereto (Deposition of Donnie Helms) at 32:18-20 ("we don't have any trade secrets"), 104:18-105:5 (noting that Pursuant's kiosk and business model are not confidential and "can be pretty easily observed by anyone"). Lavery's contention that *Pursuant* "does not want" public disclosure of the transcript is thus incorrect.

Lavery's motion seeks to seal his deposition testimony about the parties' closing of the Contribution Agreement and Lavery's admissions that – at the closing – he did not provide any documents or materials evidencing any non-patent intellectual property, Doc. 30-6 at 71:19-22, he did not provide any "business model" to Solohealth, *id.* at 73:18-24, he did not provide any "method" for implementing a medical screening kiosk, *id.* at 74:1-6, he did not provide to Solohealth any of the purported "trade secrets" described in Lavery's response to interrogatory number 7, *id.* at 99:15-24, and he did not request that the Contribution Agreement include any confidentiality obligations in his favor. *Id.* at 74:18-22. These admissions are the subject of Pursuant's motion for summary judgment and appear in several different filings on the public docket. *See, e.g.,* Doc. 30 at 11, 16, Doc. 30-6 at 71:19-22, 73:18-24, 74:1-6, 74:18-22, 99:15-24, Doc. 33 at 2, Doc. 33-2 at 71:19-22, 73:18-24, 74:1-6, 74:18-22, 99:15-24.

**II.     The Motion also should be denied because Lavery has not carried his burden of showing the transcript describes trade secrets.**

In addition, there is no compelling reason to seal Lavery's deposition transcript because the deposition excerpts contain neither confidential nor trade secret information. *See Shane Grp.*, 825 F.3d at 308 (noting that motions to seal generally should be denied unless the information at issue is trade secret, privileged, or protected by a statutory confidentiality requirement). To the contrary, the redacted deposition transcript (Doc. 36-1) confirms that Lavery's claimed ideas are not legally protectible trade secrets or even confidential, for three reasons.

***First***, much of the information that Lavery's proposes for seal has been disclosed in Lavery's patent or in other matters of public record. Some of the deposition excerpts describe concepts specifically disclosed in Lavery's patent. For instance, Lavery has redacted testimony referring to the kiosk's internet connection, collection of patient data, performance of blood pressure and other medical tests, and sorting patients based on their kiosk test results. *E.g.*, Doc. 37 ("Lavery Dep.") at 155:7-11, 26:6-13; Doc. 30-6 at 118:12-23. The patent covers each of these ideas. Doc. 30-3 at cols. 4:47-58 (describing the collection of patient data and its transmission through the internet), 5:32-33 ("A blood pressure cuff may also be provided to obtain a patient's blood pressure."), 4:62-5:3 (explaining that diagnoses "can be handled with different levels of concern" depending on the severity of the patient's condition). Indeed, Lavery freely admitted that the patent discloses ideas

included in other redacted blocks of testimony. *Compare* Doc. 37, Lavery Dep. at 105:23-25 (referring to placement of a retinal camera in an automated kiosk) *with id.* at 106:13-16 (admitting this idea is in the patent); *compare also* Doc. 30-6 at 126:25-127:1 (testimony regarding "future functionality" and "diagnostic testing") *with id.* at 127:11-13 (admitting "the patent does talk about the diagnostic testing").

As discussed above, Lavery's proposed excerpts also include material already filed on the public docket, which cannot constitute trade secrets as a matter of law. *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 245 F.R.D. 632, 637 (D. Minn. 2007) (holding documents lost trade secret status when "used in open court"). Certain excerpts also correspond to written discovery responses that Pursuant publicly filed in support of its discovery and summary judgment motions. Doc. 33-2 at 83:16-84:18 (agreeing that Lavery's response to a document request correctly stated he did not know of any documents evidencing efforts to maintain the secrecy of his claimed "method" trade secret); *id.* at 82:15-21, 99:16-17 (referencing trade secrets described in Lavery's interrogatory responses); *see also* Docs. 30-17 (responses to document requests), 18-4 (interrogatory responses).

Similarly, Lavery seeks to redact his testimony about distinctions between the Letter of Intent and the Contribution Agreement, Doc. 37 at 64:7-8, but the Contribution Agreement was attached to Plaintiff's Complaint and Pursuant attached

the Letter of Intent to its Motion for Summary Judgment. Lavery Dep. at 64:7-8; *see* Docs. 30-7, 30-8.

Finally, some 76 pages of Lavery's deposition transcript—approximately half of the document—already have been filed on the public docket, destroying the confidentiality of the information contained in the filed excerpts. Docs. 30-6, 33-2; *Guidant Corp.*, 245 F.R.D. at 637.

**Second**, Lavery's proposed excerpts for seal are random and inconsistent; he has picked individual words and phrases without any apparent confidentiality justification. For example, his proposed redactions include the term "business model," Doc. 37, *compare* Lavery Dep. at 31:21 (redacted) *to* Doc. 36-1 at 31:10-11 (unredacted), the word "contribution" in the Contribution Agreement, Doc. 33-2 at 64:2, the term "Letter of Intent," *e.g.*, *compare* Doc. 37 at 58:14-15, 16, (redacted) *to* Doc. 36-1 at 65:10 (unredacted) and other general terms like "macular degeneration," Doc. 30-6 at 121:23, 122:1, "advertising," *id.* at 126:5, "contacts," *id.* at 126:20, "future functionality," *id.* at 127:25-128:1, "hearing," *id.* at 128:4, 128:11, and "data," *id.* at 129:5. Other proposed redactions cover sentence fragments with no apparent bearing on Lavery's alleged trade secrets. " or that are otherwise part of the public record. *Compare* Doc. 36-1 *with* Doc. 37, Lavery Dep. at 105:22 ("little pieces of"); *id.* at 154:24 ("So SoloHealth was going to be a vision company"); *also compare* Doc. 36-1 at 99:21 (redacted) *with* 33-2 at 99:21

(unredacted) ("response to interrogatory number 7, did you"). The Motion offers no rationale as to how these fragmented terms and phrases could possibly qualify as confidential.

*Third*, the ideas Lavery seeks to seal are described so vaguely as to be meaningless. Lavery points to his industry background, claiming his general knowledge of the ophthalmology market, industry connections, and "the internet" qualified as trade secrets. Doc. 37, Lavery Dep. at 105:7-25. But he does not explain *what* this knowledge is, *how* he would put it into practice, or *why* this information has independent economic value based on its secrecy. *See* MCL § 445.1902(d). Similarly, Lavery claims he and Bart Foster discussed "the possibilities of what the kiosk could do and how it would be implemented," but he never specifically describes any novel idea (other than concepts in the patent) regarding the functionality or commercialization of the kiosk. Doc. 30-6, Lavery Dep. at 82:15-21.

Lavery's testimony about how to monetize the kiosk typifies this issue. He claims as trade secrets the ideas that doctors or insurers would pay for kiosk test information, Doc. 30-6, Lavery Dep. at 116:6-8; that users would pay to use the kiosk, *id.* at 116:22, 117:3; that ophthalmologists would purchase kiosks, *id.* at 118:5-6; that kiosks would be leased to the locations where they are installed, *id.* at 122:17-123:8; and that companies would pay to advertise eyecare products on the

kiosk, *id.* at 125:19-25. These ideas simply reflect common industry knowledge—selling a medical device to a physician is not a trade secret. And even if there was some unique aspect of Lavery's ideas, he describes them only superficially and bases his claims on a Contribution Agreement that has no confidentiality obligation. Doc. 30-19; *see* Doc. 30-6 at 78:17-79:24, 83:13-85:11 (confirming the accuracy of discovery responses that confirm the absence of any confidentiality agreements). Nor has Lavery offered any evidence that his ideas have economic value based on their secrecy. *See* MCL § 445.1902(d).

As another example, Lavery asserts that utilizing a medical screening kiosk "to screen people in the mall" is "totally a trade secret," Doc. 30-6 at 113:5-6, including the plan for a kiosk to "capture that [medical] information without having to have an employee standing at the mall all day," *id.* at 31:18-19, even though the placement of any medical screening kiosk in a public shopping mall, with its screening functionality in full view and without a live person supervising, could not constitute a "secret."

Indeed, the lack of particularity precludes trade secret status. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 786 (E.D. Mich. 2019). "[A] party seeking trade secret protection must identify its trade secrets with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge in the trade or of special

knowledge of persons skilled in the trade." *Id.* (citation omitted). Lavery has not offered any details to distinguish the ideas described in his deposition, like advertising eyecare products, from general knowledge in the medical device industry. This failure justifies denial of the Motion. *Id.* at 785-88 (denying motion to seal where movant failed to identify with particularity any alleged trade secrets in the subject documents). It also distinguishes this case from the out-of-jurisdiction authorities cited in the Motion, where courts sealed documents based on findings that they contained valuable, particularized trade secrets. *See* Mot. at 8-9.

## CONCLUSION

For the foregoing reasons, Pursuant asks that the Court deny the Motion.

Respectfully submitted, this 23rd day of June, 2023.

|  |  |
|---|---|
| Steven Susser<br>Mich. Bar No. P52940<br>CARLSON, GASKEY & OLDS, P.C.<br>400 W. Maple Road, Ste 350<br>Birmingham, MI  48009<br>Tel.: (248) 283-0734<br>ssusser@cgolaw.com | /s/ Joel D. Bush, II<br>Joel D. Bush, II<br>E.D. Mich. No. 5707205<br>Bennett T. Richardson<br>E.D. Mich. No. 5998335<br>KILPATRICK TOWNSEND  LLP<br>1100 Peachtree Street, Suite 2800<br>Atlanta, GA 30309 |

*Counsel for Defendant Pursuant Health, Inc.*

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

This 23rd day of June, 2023.

/s/ Joel D. Bush, II
Joel D. Bush, II
E.D. Mich. No. 5707205

*Counsel for Defendant Pursuant Health, Inc.*
